Btjffih, J.
 

 The verdict is entered on both counts, hence, if there be error as to either, the judgment must be reversed. The Court is of opinion, however, that there is error in both. As to the first: upon the supposition that the jury did not believe the witness to the plaintiff’s license to carry the slaves below Bear Creek, he would be entitled to nominal damages for the breach of the contract, by the mere fact of carrying them there. But he would be entitled to no more, unless upon evidence that he sustained greater damage in an injury to the slaves, by reason that they were carried beyond the point stipulated. Here, there was no such evidence, unless it be, in the fact, that the defendants did not there take that due care of them, which is the gravamen of the second count, and for which they would be responsible, without reference to the place, at which there was a want of ordinary care. From the amount of damages, however, it is probably to be inferred that they were assessed upon the second count, which charges the defendants, as bailees for hire, with a want of due care of the negroes, whereby they became frost-bitten.
 

 It is plain, from the state of facts, as assumed in the instructions, that the slaves became frost-bitten, not while in the service of the defendants, but on their journey to their master’s, in another county, and at a considerable distance, undertaken and performed without the directions of the defendants, and against the orders of their manager. It cannot be admitted, on that state of facts, with the supposition, in addition, that due provision had not been made for their health and comfort at the place of their employment, that the defendants would be liable for a-damage arising wholly after they left their serviee, from a long exposure in inclement weather; since, although the slaves might not be obliged to remain
 
 *360
 
 with the defendants, they might have sought shelter elsewhere, and it was their own act and fault thus to expose themselves. That would certainly be the rule in respect to a free servant for hire, and no reasons are distinctly seen for a contrary rule as to slaves, who have the same natural reason and instinct to self-preservation and escape from bodily sufferings and dangers. But without regard to that, the Court is of opinion that there was no such want of ordinary care of the slaves as authorised them to leave the situation in which the defendants had placed them, and, wilfully deserting their service, undertake such a journey in such severe weather. The defendants were bound to ordinary care, that is, such care as prudent men generally, under the same circumstances, and engaged in the same business, take of their own slaves. Hence, it became material, in this case, to show what was the degree of care generally practiced by the persons, engaged in making railroad embankments and excavations, in respect to the lodging of their own slaves employed in the work. For, certainly, one who hires himself or his slave to serve in a particular employment, must be supposed to understand the usages and ordinary risks in that employment, and to contract in reference to them. These slaves were hired a£ rail-road hands at high wages, for mere laborers, and, therefore, it was relevant to the question of ordinary care to'enquire whether, by reason that the work is to be done along an extended line, at no particular point of which there is long detention, any better provision for lodging is usually erected by the contractors of ordinary prudence than temporary buildings for shelter and lodging, and whether that erected by the defendants was such, or as good as, are ordinarily provided for that purpose. The evidence to those points, was, therefore, improperly rejected; and, supposing it to have been received, it would have established the defense. Take the common case of a man who hires himself as a wagoner, to drive the employer’s wagon to markets, through the year. ¥e know that, universally, they sleep in the open air, or lodge in the wagon in bad weather— lying by at such periods as are too inclement for travelling.
 
 *361
 
 Surely, if the -wagoner should catch cold, or become frostbitten on a long trip, it would be deemed but a natural incident to the business in which he engaged, and no one would think of his having an action against his employer, because he did not furnish money to get better lodging. Still less, would the employer be held responsible for the chilblains brought on by the wanton and foolish exposure of the servant to excessive and unusual frosts. If, therefore, the provision made by these defendants, for their hands, was that which is-ordinarily made by prudent men, in their business, and has been found by experience to be sufficient for protection from suffering and disease, it was all they contracted to make, as far as can be implied by law, from their character as bailees for hire; and that, in this case, it was practically sufficient, is established by the fact, that about twenty other slaves remained at the spot, sustaining, from the storm, no harm of any sort, as would doubtless have been the case with these slaves, had they not undertaken to breast it, rather than remain in their quarters and keep themselves warm with the abundant supply of fuel at hand.
 

 PeR Cueiam, Judgment reversed and a
 
 venire de now.